# Exhibit 1

## UNITED STATES INTERNATIONAL TRADE COMMISSION

### Washington, D.C.

In the Matter of

**CERTAIN IP CAMERA SYSTEMS INCLUDING VIDEO DOORBELLS AND COMPONENTS THEREOF**

**INV. NO. 337-TA-1242**

**ORDER NO. 16:    INITIAL DETERMINATION GRANTING RESPONDENTS' MOTION FOR SUMMARY DETERMINATION THAT THE ENTIRE INVESTIGATION BE TERMINATED DUE TO INVALIDITY OF THE ASSERTED PATENTS**

(September 15, 2021)

On May 21, 2021, respondents SimpliSafe, Inc., and Vivint Smart Home, Inc. (collectively, "Respondents") filed a motion ("Mot.") and statement of material facts ("SMF") seeking a finding on summary determination that all patent claims asserted in this investigation are anticipated by the inventors' own earlier patent due to a break of copendency in the application priority chain. Motion Docket No. 1242-002.  On June 3, 2021, complainants SkyBell Technologies, Inc., SB IP Holdings, LLC, and Eyetalk365, LLC (collectively, "Complainants") filed a brief in opposition ("Opp'n") and a response disputing a minority of Respondents' statement of material facts ("DSMF").  I held oral argument on the motion on June 16, 2021.[1]

## I.    BACKGROUND

In this investigation, Complainants assert seven patents:  U.S. Patent No. 9,485,478; U.S. Patent No. 9,432,638; U.S. Patent No. 10,097,796; U.S. Patent No. 10,200,660; U.S. Patent No.

---

[1] The transcript of the oral argument is available on EDIS as Doc. ID 744968 and is hereinafter referred to as "Tr."

10,997,797; U.S. Patent No. 10,523,906; and U.S. Patent No. 10,674,120 (collectively, "the Asserted Patents").  The Asserted Patents belong to the same patent family and all claim priority to a single provisional application, number 60/418,384, filed by Ronald Carter on October 15, 2002 ("'384 provisional application").  The following diagram illustrates the priority chain claimed on the face of the patents:



Mot. at 5.

As shown with the dashed line annotation above, the question upon which this motion turns is whether there is copendency between application number 14/338,525, filed July 23, 2014 ("'525 application"), and application 14/670,044, filed on March 26, 2015 ("'044 application").

Respondents contend that the '525 application was abandoned no later than midnight on October 6, 2014, for failure to submit the required filing fee.[2]  Mot. at 6.  The next application in the chain, the '044 application, was not filed until March 26, 2015, more than 5 months later.  Mot. Ex. 1 ("'478 patent") at cover page.  In Respondents' view, this 5-month gap means that the '044 application was not "filed before the patenting or abandonment of or termination of proceedings on" the '525 application, as required by 35 U.S.C. § 120.  Accordingly, Respondents contend the '044 application does not get the benefit of an earlier filing date.  *See* Mot. at 11.  It is undisputed that U.S. Patent No. 8,164,614 ("'614 patent," second in the chain illustrated above) issued more than a year before the '044 application was filed and discloses every limitation of every asserted patent claim.  SMF Nos. 40, 51-57, 65; DSMF Nos. 40, 51-57, 65.  Therefore, according to Respondents, all the asserted patent claims are invalid under 35 U.S.C. § 102 as anticipated by the '614 patent.  *See* Mot. at 29.

Although Complainants agree that no filing fee was ever paid in connection with the '525 application and that the '525 application was abandoned, Complainants dispute the day on which that abandonment occurred.  *See* DSMF Nos. 82-85; Opp'n at 1.  Complainants contend that the '525 application was not abandoned until the United States Patent and Trademark Office ("USPTO" or "the Patent Office") said so in a Notice of Abandonment mailed on April 7, 2015, and that "proceedings" on the '525 applications were not "terminat[ed]" before that date.  *See*

---

[2] Because the prescribed deadline (October 4, 2014) fell on a Saturday, the period for reply is extended through midnight of the following Monday (October 6, 2014).  35 U.S.C. § 21; 37 C.F.R. § 1.7; M.P.E.P. § 710.05.

Opp'n at 1 (citing 35 U.S.C. § 120).  Because the '044 application had been filed on March 26, 2015, before the date of the Notice of Abandonment, Complainants contend there is an unbroken chain of copendency back to the '384 provisional application and the '614 patent is not prior art to any patent asserted in this investigation.  *See id.*

The parties' positions are summarized in the following chart, with their disputed propositions highlighted.  The red arrow indicates each party's position on the pendency of the '525 application.  The blue arrow represents the undisputed pendency of the subsequent '044 application:

| Date | Respondents | Complainants |
|------|-------------|--------------|
| April 24, 2012 | '614 patent issued disclosing all limitations of the asserted claims. ||
| July 23, 2014 | '525 application filed without paying filing fee. '525 application claims priority to the original '384 provisional application through the application leading to the '614 patent. ||
| August 4, 2014 | '525 application:  Patent Office mailed Notice to File Missing Parts giving "**TWO MONTHS** from the date of this Notice" to pay the filing fee and "avoid abandonment." ||
| October 6, 2014, midnight | **'525 application became abandoned by operation of law for failure to pay filing fee within the prescribed two-month time.** | |
| October 7, 2014- March 26, 2015 | **5-month gap in copendency** | |
| March 26, 2015 | '044 application filed claiming priority to the original '384 provisional application through the '525 application. ||
| April 7, 2015 | | **'525 application became abandoned when the Patent Office mailed Notice of Abandonment.** **No gap in copendency.** |

## II.     UNDISPUTED FACTS

I find the following facts are not in dispute.

### A.     The '614 Patent

The '614 patent issued on April 24, 2012.  Mot. Ex. 12 ("'614 patent") at cover page.  It is undisputed that the '614 patent discloses every limitation of every patent claim asserted in this investigation.  DSMF Nos. 51-57.

### B.     The '525 Application

The '525 application was filed with the Patent Office on July 23, 2014.  Mot. Ex. 8 ("'525 application file history") at SIMPLISAFE-SB-007466.  It claimed priority to the original '384 provisional application through several applications, including the application leading to the '614 patent.  *Id.* at SIMPLISAFE-SB-00007419.  The filing included an abstract, specification, claims, and drawings.  *Id.*  The applicant did not submit the required filing fees with the application. DSMF Nos. 82-85.

On August 4, 2014, the Patent Office mailed the '525 applicant a Notice to File Missing Parts.  '525 application file history at SIMPLISAFE-SB-00007466-67.  The Notice to File Missing Parts listed a number of missing items:

- "The Statutory basic filing fee is missing."

- "The application search fee must be submitted."

- "The application examination fee must be submitted."

- "The inventor's oath or declaration or an application data sheet (ADS) naming each inventor has not been submitted…"

*Id*.  The missing fees totaled $1,740.  *Id*.  The Missing Parts Notice further specified that replacement drawings "must be timely submitted to avoid abandonment."  *Id*.

The Missing Parts Notice emphasized in two different places, using capitalization and bold

face font, that failure to pay the fees would within "**TWO MONTHS** from the date of this Notice"

would result in the application becoming abandoned:

**Items Required To Avoid Abandonment:**

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

• The statutory basic filing fee is missing.
• The application search fee must be submitted.
• The application examination fee must be submitted.

*Id*. at SIMPLISAFE-SB-00007466.

**SUMMARY OF FEES DUE:**

The fee(s) required within **TWO MONTHS** from the date of this Notice to avoid abandonment is/are itemized below. No entity status discount is in effect. If applicant is qualified for small entity status, a written assertion of small entity status must be submitted to establish small entity status. (See 37 CFR 1.27). If applicant is qualified for micro entity status, an acceptable Certification of Micro Entity Status must be submitted to establish micro entity status. (See 37 CFR 1.29 and forms PTO/SB/15A and 15B.)

• $ **280** basic filing fee.
• $ **140** surcharge.
• $ **600** search fee.
• $ **720** examination fee.
• $( **0**) previous unapplied payment amount.
• $ **1740** TOTAL FEE BALANCE DUE.

*Id*. at SIMPLISAFE-SB-00007467.

The Notice of Missing Parts also reiterated, "Replies must be received in the USPTO within

the set time period or must include a proper Certificate of Mailing or Transmission under 37 C.F.R.

§ 1.8 with a mailing or transmission date within the set time period." *Id*.

On November 23, 2014, the applicant filed an application data sheet. *Id*. at SIMPLISAFE-

SB-00007471. The Patent Office acknowledged receipt of this document but found it deficient.

*Id*. at SIMPLISAFE-SB-00007484, -87. On January 15, 2015, the applicant filed a Change of

Correspondence Address. *Id*. at SIMPLISAFE-SB-00007480. The applicant did not submit any

fees or drawings. DSMF Nos. 82-85, 91.

On February 4, 2015, the Patent Office mailed a Notice of Incomplete Reply, stating:

> The U.S. Patent and Trademark Office has received your reply on 11/23/2014 to the Notice to File Missing Parts (Notice) mailed on 08/04/2014 and it has been entered into the nonprovisional application.  The reply, however, does not include the following items required in the Notice.  A complete reply must be timely filed to prevent **ABANDONMENT** of the above-identified application.

'525 application file history at SIMPLISAFE-SB-00007484 (emphasis in original).  The Notice of Incomplete Reply listed a number of missing items:

- "The statutory basic filing fee is missing."

- "The application search fee was not received."

- "The application examination fee was not received."

- "The inventor's oath or declaration or an application data sheet (ADS) naming each inventor has not been submitted…"[3]

*Id*.  The Notice of Incomplete Reply further specified that replacement drawings "must be timely submitted to avoid abandonment."  The Notice of Incomplete Reply also specified the deadline for submitting the required materials as follows:

> Applicant is given **TWO MONTHS** from the date of the Notice to File Missing Parts (Notice) mailed 08/04/2014 within which to file all required items and pay any fees required below to avoid abandonment.  Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

*Id.* (emphasis in original).

On March 12, 2015, applicant filed a Transmittal for Power of Attorney.  *Id.* at SIMPLISAFE-SB-00007488-93.  On March 26, 2015, the Patent Office mailed a Notice of Acceptance of Power of Attorney.  *Id*. at SIMPLISAFE-SB-00007494.  Again the applicant did not submit any fees or drawings.  Neither did the applicant petition for an extension of time to take any action to revive or extend prosecution of the '525 application.

---

[3] As noted, the Patent Office found the application data sheet that was filed on November 23, 2014, to be defective.  *See* '525 application file history at SIMPLISAFE-SB-00007487.

On April 7, 2015, the USPTO mailed a Notice of Abandonment.  *Id.* at SIMPLISAFE-SB-00007495.  The Notice of Abandonment stated, "The above-identified application is abandoned for failure to timely or properly reply to the Notice of Missing Parts (Notice) mailed on 08/04/2014."  *Id.* at SIMPLISAFE-SB-00007495-96.

### C.    The '044 Application

The '044 application was filed by Ronald Carter on March 26, 2015, as a continuation of the '525 application.  '478 patent at cover page.  The '044 application claimed priority under 35 U.S.C. § 120 to the original '384 provisional application through the '525 application.  *Id.*  All of the patents asserted in this investigation claim priority through the '044 application.  It is undisputed that if the priority claim made in the '044 application fails, the '615 patent would be anticipatory prior art to all of the claims asserted in this investigation.  *See* DSMF Nos. 40, 51-57, 64.

## III.    ANALYSIS

Summary determination is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a determination as a matter of law.  *See* 19 C.F.R. § 210.18.  In determining whether there is a genuine issue of material fact, "the evidence must be viewed in the light most favorable to the party opposing the motion with doubts resolved in favor of the non-movant."  *Crown Operations Int'l, Ltd. v. Solutia, Inc.*, 289 F.3d 1367, 1374 (Fed. Cir. 2002) (citations omitted).

Section 120 of the Patent Act allows an applicant to benefit from the filing date of an earlier patent application under certain enumerated circumstances.  To claim the benefit, a later-filed patent application must be "filed before the patenting or abandonment of or termination of proceedings on the first application."  35 U.S.C. § 120.  This provision requires "a continuous

chain of copending applications" to secure the benefit of the earliest application filing date. *Application of Schneider*, 481 F.2d 1350, 1356 (C.C.P.A. 1973).

Section 111 of the Patent Act makes clear that an application is abandoned by operation of law when an applicant fails to submit the statutorily required fee, the oath or declaration, or one or more claims within a prescribed period of time:

> The application shall be accompanied by the fee required by law.  The fee, oath or declaration, and 1 or more claims may be submitted after the filing date of the application, within such period and under such conditions, including the payment of a surcharge, as may be prescribed by the Director.  *Upon failure to submit the fee*, oath or declaration, and 1 or more claims *within such a prescribed period*, the application *shall be regarded as abandoned*.

35 U.S.C. § 111 (emphasis added).

Complainants contend that the '525 application was not abandoned until the Patent Office mailed the Notice of Abandonment on April 7, 2015.  Complainant's position is contrary to the plain language of the Patent Act, which specifies that an application is abandoned "[u]pon failure to submit the fee . . . within [the] prescribed period."  35 U.S.C. § 111.  Here, the applicant "fail[ed] to submit the fee . . . within [the] prescribed period" that ended on at midnight on October 6, 2014, and at that moment the Patent Office "regarded [the '525 application] as abandoned."  *See id*. Section 111 is a "self-executing" statute, like the statute designating a patent as expired when maintenance fees are not timely paid.  *See Ray v. Lehman*, 55 F.3d 606, 609 (Fed. Cir. 1995). "[A]bandonment occurs from failure to prosecute an application," not from an action by the Patent Office.  *See Douglas v. Manbeck*, 975 F.2d 869 (Table), 1992 WL 162547, at *2 (Fed. Cir. 1992) (unpublished).

Complainants' position is also contrary to well-established Patent Office practice.  The Manual for Patent Examining Procedure ("M.P.E.P") explains that "[a]bandonment takes place by operation of law for failure to reply to an Office action or timely pay the issue fee, not by operation

of the mailing of a Notice of Abandonment." M.P.E.P. § 711.03(c); *see also id*. at § 711.04(c) ("in no case will mere failure to receive a notice of abandonment affect the status of an abandoned application"); *Changes to Patent Practice and Procedure*, 62 Fed. Reg. 53132-01 (Oct. 10, 1997) ("abandonment takes place by operation of law, rather than the mailing of a Notice of Abandonment"). An application "is regarded as abandoned after midnight of the date the period for reply expired." M.P.E.P. at § 710.01(a). This "longstanding administrative construction" of the abandonment provisions in the Patent Act is a "powerful" indication of the statute's meaning. *See Immersion Corp. v. HTC Corp.*, 826 F.3d 1357, 1364 (Fed. Cir. 2016); *see also Morganroth v. Quigg*, 885 F.2d 843, 848 (Fed. Cir. 1989) (Patent Office's interpretation of "specialized statutory and regulatory provisions governing abandonment" is entitled to "considerable deference").

Complainants contend that the Notice of Incomplete Reply mailed February 4, 2015, demonstrates that the '525 application was not abandoned in October 2014. Opp'n at 7-8. Complainants focus on a passage in this Notice which states "[a] complete reply must be timely filed to prevent **ABANDONMENT** of the above-identified application." *Id*. (emphasis in original). Complainants' brief argues "[i]t is not possible to 'prevent abandonment' of an already abandoned application," and therefore the '525 application could not have been abandoned prior to this Notice. *Id*.; *see also id*. at 9-10. At the hearing, however, Complainants' counsel conceded that an applicant can "file some kind of, you know, papers" in an abandoned application that would allow the Patent Office to "deem it unabandoned," undercutting the argument in Complainants' brief. *See* Tr. at 69:15-24. But more importantly, the express language in the Notice of Incomplete Reply states that the '525 application would become abandoned after October 6, 2014 (*i.e.*, "**TWO MONTHS** from . . . 08/04/2014"), and the way to "prevent" that status from becoming permanent

was by "filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a)" to obtain an extension of the October deadline. '525 application file history at SIMPLISAFE-SB-00007466-67; M.P.E.P. at § 710.01(a) ("If the period for reply is extended, the time extended is added to the last calendar day of the original period . . .").

There is no dispute that the applicant never filed a petition or paid a fee to extend the time to respond to the Notice of Missing Parts. That was necessary "to prevent **ABANDONMENT**," as the Notice of Incomplete Reply expressly advised. Thus, the Notice of Incomplete Reply is not evidence that the application was still pending in February 2015.

Even if the mailing of the Notice of Incomplete Reply Notice on February 4, 2015, were evidence that the '525 application was still pending on that date (and it is not), the Notice does not demonstrate pendency seven weeks later, on March 26, 2015, when the '044 application was filed. It is undisputed that in those seven weeks the applicant took *none* of the actions required by the Notice to avoid abandonment.

Next, Complainants appear to argue that because the Manual of Patent Examining Procedure states that "[t]he 2-month time period for reply to A Notice to File Missing Parts of an Application is not identified on the Notice as a statutory period subject to 35 U.S.C. § 133," the applicant "had the full six months, under § 133, to respond to" the Notice to File Missing Parts. *See* Opp'n at 8 (citing M.P.E.P. § 710.02(d) (Ninth Edition, Rev. 1 (March 2014))). It is true that the two-month period for replying to a Notice to File Missing Parts is not set in statute. But it does not follow from that fact that the applicant had six months to reply to the Notice. As stated in § 111, the period for submitting the filing fee "may be prescribed by the Director," but once the period is set, the applicant must comply "within such a prescribed period" or "the application shall be regarded as abandoned." 35 U.S.C. § 111. Here, the Director set a two-month period for the

applicant to submit the missing filing fee. '525 application file history at SIMPLISAFE-SB-00007466-67; *see also* M.P.E.P. § 506.  The two-month period could have been extended by five months, or even more, but only if the applicant filed a proper petition for extension.  '525 application file history at SIMPLISAFE-SB-00007484-85; *see* 37 C.F.R. § 1.136; M.P.E.P. § 710.02(d).  It is undisputed that the applicant never attempted a petition for extension of time.

Complainants also contend that the Notice of Incomplete Reply granted the applicant "an additional two months" beyond the mailing date of that document on February 4, 2015, in which to submit the missing materials.  Opp'n at 10.  That argument is baseless.  When asked at the hearing to point out the words in the Notice supporting this theory, Complainants' counsel admitted the words are not there.  Tr. at 59:8-60:20 (Q.  "So it's not in this document at all."  A. "Correct.").  What the Notice of Incomplete Reply actually said was that the time for compliance was "**TWO MONTHS** from the date of the Notice to File Missing Parts (Notice) mailed 08/04/2014" and that an extension could be obtained if the applicant filed a petition.  The Notice did *not* say the applicant had been granted two months beyond February 4 to comply.

Complainants contend that the fact that the Notice of Abandonment was mailed two months after the Notice of Incomplete Reply confirms that the Notice of Incomplete Reply included a two-month extension.  But the Patent Office mails a Notice of Abandonment based on completely different timing.  "Applications are not ordinarily reviewed for possible abandonment until the maximum permissible period for which an extension of time under 37 C.F.R. § 1.136(a) plus 1 month has expired."  *See* M.P.E.P. § 711.04(a).  Thus, if Complainant's theory about the Notice of Incomplete Reply were correct, the Notice of Abandonment should have come much later, not in April 2015.  But more importantly, as has already been explained, the date of a Notice of

Abandonment has no effect whatsoever on the date the application was actually abandoned.  *See* 35 U.S.C. § 111; M.P.E.P. §§ 710.01(a),  711.03(c).

Complainants seem to acknowledge that their interpretation of the Notice of Incomplete Reply is controversial, and they argue that the Notice of Incomplete Reply must be interpreted in their favor at the summary determination stage.  Opp'n at 10 n.3.  But Complainants' interpretation of the Notice is a legal argument, not a fact.  *See Broad. Innovation, L.L.C. v. Charter Commc'ns, Inc.*, 420 F.3d 1364, 1366 (Fed. Cir. 2005) (the priority date of a patent "is purely a question of law"); *see also Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241, 1254 (Fed. Cir. 2000) (disputes over what one "would conclude from the prosecution history cannot create a genuine issue of material fact so as to bar summary judgment").  A disputed legal interpretation of the Notice of Incomplete Reply is not enough to defeat summary determination.

As an alternative to their theory that the '525 application was not abandoned until April 2015, Complainants also argue that the "termination of proceedings" on the '525 application did not occur under 35 U.S.C. § 120 until the Patent Office mailed the Notice of Abandonment in April.  Opp'n at 12-13.  Therefore, Complainants contend, there was copendency between the '525 application and the '044 application when the latter was filed in March 2015.

Complainants' interpretation of "termination of proceedings" in § 120 is again contrary to established law and practice.  For a later application to be pending at the same time as an earlier application, § 120 requires that the later application be "filed before the patenting or abandonment of or termination of proceedings on the first application."  35 U.S.C. § 120.  This statute has long been interpreted to mean that an application can be in only one of three mutually exclusive conditions:   (1) pending; (2) patented; or (3) abandoned.  *Changes to Patent Practice and Procedure*, 62 Fed. Reg. 53132-01 (Oct. 10, 1997); *see also In Re Pat. No. 5,818,338*, 1999 WL

34807464, at *2 (Com'r Pat. Nov. 26, 1999) ("Where proceedings in an application are terminated by way of the granting of a patent, such application is no longer . . . pending nor abandoned, but is patented."); *In Re Application of Michael R. Levine*, 1999 WL 34807462, at *6 (Com'r Pat. July 7, 1999) (proceedings are terminated when an application is abandoned).   An abandoned application "is removed from the [Patent] Office docket of pending applications," which terminates proceedings under § 120.  *See* M.P.E.P. § 711.  As has already been explained, the '525 application was abandoned no later than midnight on October 6, 2014, and proceedings on that application were simultaneously "terminated" at that time.  Thus, the "termination of proceedings" clause in § 120 does not rescue the '525 application.

Continuing their misconstruction of § 120, Complainants contend that a later application is copending with an earlier application so long as *any one* of the three conditions listed in the statute—"patenting or abandonment of or termination of proceedings"—has not occurred yet. Opp'n at 13-17.  Under Complainants' theory, if an application has been patented, but not abandoned, the application is still pending.  That means years after a patent has issued, an applicant could file a new application that could be copending with the patented application.  Additionally, under Complainants' theory, an application that had been abandoned could be copending with any later application because the "patented" clause of § 120 will never have been met with respect to the abandoned application.  Complainants' interpretation not only leads to absurd results, it has long been rejected.  *See, e.g.*, *In Re Pat. No. 5,818,338*, 1999 WL 34807464, at *2 (Com'r Pat. Nov. 26, 1999) ("Where proceedings in an application are terminated by way of the granting of a patent, such application is no longer . . . pending nor abandoned, but is patented.").  "Congress did not intend that an applicant should be able to 'prosecute' his application indefinitely before the

Patent Office." *Lorenz v. Finkl*, 333 F.2d 885, 889 (C.C.P.A. 1964). Complainants' interpretation of § 120 has no merit.

Complaints next resort to *Aristocrat Techs. PTY Ltd. v. Intern. Game Tech*., 543 F.3d 657 (Fed. Cir. 2008) to argue "[n]either §§ 111 nor 133 offer a cognizable basis for a defense to patent infringement." In *Aristocrat*, an accused infringer argued an asserted patent was invalid because the application leading to the patent was abandoned and then revived in a manner contrary to law. When analyzing the history of the application at issue, the Federal Circuit considered § 133 and § 371 of the Patent Act, which "spell out under what circumstances a patent application is deemed abandoned during prosecution and under what circumstances it may be revived." *Id*. at 663. After comparing those sections with other sections dealing with patentability, like §§ 102, 103, and 112, the court held that that failure to comply with § 133 and § 371 during prosecution of the application at issue did not provide an independent defense to an accused infringer. *Aristocrat*, 543 F.3d at 663.

The posture of this investigation is easily distinguished from *Aristocrat*. Here, Respondents argue that the Asserted Patents are invalid because they are anticipated by the '614 patent, not because an application was improperly revived. Respondents contend that due to a break in copendency, the priority date for all of the asserted patents is no earlier than March 26, 2015, rendering the '614 patent prior art. In *Aristocrat*, there was no question of priority with respect to prior art or copendency of applications. *Id*. at 559-60. Complainants' counsel admitted as much at the hearing. *See* Tr. at 51:9-12. Complainants' reliance on *Aristocrat* is unavailing. *See Avanir Pharms., Inc. v. Actavis S. Atl. LLC*, 987 F. Supp. 2d 504, 511-12 (D. Del. 2013) (Stark, J.) ("*Aristocrat* did not concern co-pending applications, and it did not address § 120.").

Finally, Complainants argue that the Patent Office "specifically examined priority" in the '044 application and in a later application, 14/794,299 ("'299 application"), and in both instances "confirmed entitlement to priority" through the '525 application. Opp'n at 4-5, 23. There is no dispute that the applicant intentionally argued priority to overcome certain prior art rejections and that the examiner relied upon the applicant's priority representations when withdrawing certain rejections. *See, e.g.*, Opp'n Ex. I at 113-22 ('044 application history); Opp'n Ex. J at 141-72 ('299 application history). But in neither application did the examiner make specific findings about the date that the '525 application was abandoned. With respect to the '299 application, the priority discussion was directed to whether earlier applications in the chain provided written description support under 35 U.S.C. § 112 for particular limitations. Opp'n Ex. J at 141-72. With respect to the '044 application, the examiner pointed out a discrepancy in the Patent Office database as to whether that application was a continuation or a continuation-in-part of an earlier application. Opp'n Ex. I at 122. Whatever an examiner might have thought about priority in either instance, it had "no effect on [the applicant's] duty to act within the specified time" to prevent the '525 application from becoming abandoned by operation of law. *See Application of Jones*, 542 F.2d 65, 69 (C.C.P.A. 1976) (the fact that the Patent Office allowed a continuation application to be prosecuted to issuance "without raising any question about copendency" did not relieve the applicant of the duty to act within the specified time). The undisputed record in this investigation establishes, by clear and convincing evidence, that the '525 patent was abandoned no later than midnight on October 6, 2014, and the applicant never took steps that would remedy that condition.

In sum, a priority claim failure "is not a 'hypertechnicality.'" *Droplets, Inc. v. E*TRADE Bank*, 887 F.3d 1309, 1317 (Fed. Cir. 2018). "An orderly administrative process" demands attention to the requirements of § 120. *Lorenz v. Finkl*, 333 F.2d 885, 889 (C.C.P.A. 1964). When

the '044 application was filed on March 26, 2015, the '525 patent had already been abandoned for months at least because the applicant had not submitted the necessary filing fee within the "prescribed period" set in the Notice to File Missing Parts mailed August 4, 2014. *See* 35 U.S.C. § 111. "[T]here is a clear gap in the continuity . . . necessary to secure the benefit of § 120." *Application of Hogan*, 559 F.2d 595, 609 (C.C.P.A. 1977). Accordingly, each Asserted Patent in this investigation is entitled to priority no earlier than March 26, 2015. It is undisputed that the '614 patent, issued on April 24, 2012, discloses every limitation of every claim asserted in this investigation. I determine the '614 patent is anticipatory prior art to all asserted claims, rendering every claim invalid under 35 U.S.C. § 102. Because the complaint in this investigation is based on invalid patent claims, I determine that no violation of section 337 of the Tariff Act of 1930 can be proved based on the complaint and summary determination to that effect is appropriate.

## IV.    CONCLUSION

For the reasons set forth above, it is my initial determination that Motion No. 1242-002 is granted with a finding of no violation of section 337. This initial determination, along with supporting documentation, is hereby certified to the Commission.

Pursuant to 19 C.F.R. § 210.42(h), this initial determination shall become the determination of the Commission unless a party files a petition for review of the initial determination pursuant to 19 C.F.R. § 210.43(a), or the Commission, pursuant to 19 C.F.R. § 210.44, orders on its own motion a review of the initial determination or certain issues herein.

All pending hearings and deadlines set forth in the revised procedural schedule issued as Order No. 7 on April 9, 2021, and all subsequent modifications to that schedule made by order are hereby stayed pending a final resolution by the Commission of the issues addressed in this initial determination.

**SO ORDERED.**

Clark S. Cheney
Administrative Law Judge